**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIM NO. 20-230** |
| **ANTOINE DAVIS** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE**

In the early morning hours of July 14, 2020, defendant Antoine Davis was driving alone when he was stopped by members of the Philadelphia Police Department (PPD) and found to be in possession of approximately 22 kilograms of cocaine, nearly $2.4 million in cash, and a loaded Ruger P345 .45 caliber automatic handgun. During this stop, Davis jumped from his car and fled the scene on foot, successfully evading arrest. After seeking Davis for several days, law enforcement eventually encountered him again during a second car stop, which took place on July 22, 2020. On this occasion, Davis provided officers with a fake name and date of birth. And while officers were running this information in their computer, Davis jumped from the vehicle and attempted to flee for a second time. After a brief foot pursuit, officers successfully captured Davis and placed him under arrest. Davis was found to have more than $15,000 in cash on his person, and an additional approximately $2.45 million in cash was recovered from the car seat where Davis had been sitting before he fled.

Following briefing and oral argument, the Honorable Timothy R. Rice, United States Magistrate Judge, ordered that Davis be detained in this matter pending trial. As Judge Rice correctly determined, given the serious nature of Davis's offenses, a statutory presumption in

favor of pretrial detention applies and Davis cannot rebut that presumption here. Davis is a recidivist offender, with prior federal drug trafficking and firearms convictions. Once convicted in this case, he will face a potential mandatory minimum sentence of 40 years up to a maximum sentence of life imprisonment. At the time that he possessed 22 kilograms of cocaine, Davis was also carrying a loaded automatic handgun, heightening the danger that he posed. Davis has already attempted to flee from police twice, and he attempted to provide law enforcement with a fake identity in the further hopes of evading arrest. And significantly, prior to his initial detention hearing before Judge Rice, Davis falsely withheld information from the Pretrial Services Office relating to his bank accounts, substantial cash holdings, and other assets.

These relevant considerations continue to support only one conclusion—the one appropriately reached by Judge Rice: Davis would pose a substantial risk to public safety and flight if granted pretrial release. Because Davis cannot rebut the statutory presumption and because no condition or combination of conditions will reasonably assure his appearance as required or the safety of the community, Davis should continue to be held in custody pending trial, pursuant to 18 U.S.C. § 3142.

## FACTUAL BACKGROUND

On July 14, 2020, defendant Antoine Davis was driving alone in his black Subaru Outback, when his vehicle was stopped by Philadelphia Police Officers in the 600 block of Walnut Lane in Philadelphia, a residential neighborhood. A trained drug-sniffing K9 unit was brought to the scene, and the dog alarmed on the passenger side door of Davis's vehicle. At that point, Davis jumped from the vehicle and sprinted away from the scene on foot, successfully evading capture by police. In his flight, however, Davis left behind his identification, cellular phones, and other identifying personal effects. The Subaru was searched, and officers located a

black rolling suitcase sitting on the backseat. The suitcase was opened and found to contain approximately 20 kilograms of cocaine in separately wrapped kilogram-sized bricks. Two additional kilogram-sized bricks of cocaine were recovered from under the seat nearby. The weight and presence of cocaine in these bricks was later confirmed by laboratory testing. Davis's Subaru was also found to contain the eye-popping sum of $2,361,730 in cash. This money was bundled in large stacks of various denominations of bills held together with rubber bands. Inside a backpack that sat within arm's reach of where Davis had been sitting in the driver's seat of the Subaru, officers also recovered a loaded Ruger P345 .45 caliber automatic handgun, bearing serial number 664-52269.

Davis is barred by law from possessing or carrying firearms owing to his prior federal drug and gun convictions in this Court. On February 9, 1998, Davis was convicted in the Eastern District of Pennsylvania of possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The Honorable Lowell Reed sentenced Davis to a total of 211 months' imprisonment, followed by five years of supervised release. Davis completed serving the supervisory portion of his sentence for these prior convictions in 2012.

After his flight from police on July 14, 2020, Davis remained at large for another eight days, until July 22, 2020, when a second vehicle in which he was travelling was stopped by Pennsylvania State Police. At the time, Davis was seated in the rear seat of the vehicle and was being chauffeured by another man. During the car stop, Davis provided troopers with a false identity, telling them a fake name and date of birth. While the troopers were attempting to run this false information through their cruiser's computer, Davis jumped from the vehicle and again attempted to flee on foot. This time, Davis was pursued by supporting police units and

successfully captured a short distance away. The vehicle from which Davis had fled was searched and found to contain approximately $2,444,251 in cash. This money was recovered from the backseat of the vehicle, in the same area where Davis had been sitting prior to his flight. As with the earlier cash seizure, the money was bundled in large stacks of various denominations of bills held together with rubber bands.

On August 6, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a three-count indictment charging Davis with violations of Title 21, United States Code, Section 841(a)(1), (b)(1)(A) (possession with intent to distribute 5 kilograms or more of cocaine); Title 18, United States Code, Section 924(c)(1) (possessing a firearm in furtherance of a drug trafficking offense); and Title 18, United States Code, Section 922(g)(1) (possessing a firearm after sustaining a felony conviction). Davis was transferred into federal custody by writ on October 27, 2020, and a detention hearing before Judge Rice was held soon thereafter.

Prior to his initial detention hearing in this matter, Davis was interviewed by the Pretrial Services Office in connection with its preparation of a bail report. According to the report, Davis stated that he had no known savings or checking accounts and that his total net worth was approximately $160,000, inclusive of the value of his residence. Davis also reported that he earned a modest living as laborer at the Philadelphia Convention Center; this claim is again repeated in the defendant's instant motion (at 2-3). In point of fact, the government's financial investigation has revealed that Davis controls dozens of bank accounts, in both his own name as well as those of limited liability corporations (LLC) for which Davis is the principal. The activity for these accounts reflects hundreds of thousands of dollars in cash deposits as well significant current balances. A real estate holding company owned by Davis, under the name Redzito Property Group LLC ("Redzito"), in particular, has been the recipient of hundreds of thousands

of dollars in cash deposits and transfers and has engaged in millions of dollars of real estate transactions. Davis is the lone signatory on Redzito's bank accounts. Given the sizable amount of unexplained cash filtered through these accounts, the government believes that Davis has used his LLCs and undisclosed bank accounts to launder the cash proceeds of his drug business. The government further believes that Davis falsely withheld information about these businesses and accounts from the Pretrial Services Office in the hopes of concealing his substantial assets from law enforcement—likely in the hopes that these assets will remain available to facilitate his flight should he be released.

On the above facts—which are unchanged since the time of Davis's initial detention hearing—Judge Rice determined that Davis had failed to rebut the statutory presumption in favor of pretrial detention and should be held pending trial. On November 23, 2020, Davis's counsel filed a motion challenging Judge Rice's determination and seeking Davis's pretrial release. The government opposes that motion.

## ARGUMENT

### A. A Statutory Presumption in Favor of Detention Applies.

Pretrial detention is ordered when, after a hearing, a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this finding, the Bail Reform Act authorizes the judicial officer to utilize an evidentiary presumption in favor of detention when certain circumstances enumerated in Section 3142(e)(2) and (f)(1) are implicated. The statutory presumption in favor of pretrial detention applies in this case for multiple reasons. *First*, Davis is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801

et seq.). *See* 18 U.S. Code § 3142(f)(1)(C). *Second*, Davis is charged with offenses for which the maximum authorized penalty is life imprisonment. *See* 18 U.S. Code § 3142(f)(1)(B). And *third*, Davis is charged with a felony that involves the use of a firearm. *See* 18 U.S. Code § 3142(f)(1)(E). Any one of these circumstances alone would support the application of the presumption in favor of pretrial detention. All three are applicable here.

In order to rebut the statutory presumption, a defendant bears the burden of producing "credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The government submits—and Judge Rice concluded—that Davis cannot rebut the statutory presumption that applies in this case. Davis's instant motion (at 2-3) does little more than refer to the fact that he is married, with children, and that other members of his laborers' union would "vouch" for him. Given the seriousness of Davis's criminal conduct—including his possession of a loaded automatic handgun, massive amounts of cocaine, and over $5 million in apparent drug proceeds, as well as his attempted flight from police on two separate occasions—the supportive statements of Davis's friends and relatives fall well short of the "credible evidence" threshold necessary to demonstrate that Davis will not seek to flee again or pose a further threat to the community.

**B. The Section 3142(g) Factors Support Continued Pretrial Detention.**

Further, even in the unlikely event that Davis could produce "credible evidence" rebutting the statutory presumption, that would not end the Court's inquiry. Rather, the Court would then be required to proceed to an analysis of the factors set forth under Section 3142(g)—i.e., (a) the nature and circumstances of the offenses charged, (b) the weight of the evidence against Davis, (c) Davis's history and characteristics, and (d) the nature and seriousness of the

danger to any person or the community that would be posed by Davis's release—to determine whether pretrial release is appropriate. 18 U.S.C. § 3142(g). "The ultimate determination of the question is for the court, based on all evidence and arguments adduced." *United States v. Levy*, Crim. 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008) (citing *United States v. Suppa*, 799 F.2d 115, 118–19 (3d Cir. 1986)).

Here, a careful analysis of the relevant factors demonstrates the continued need for Davis's pretrial detention.

**1. The offense circumstances establish flight risk and dangerousness.**

As noted above, the circumstances of the offenses establish that Davis is a significant drug dealer, who has already fled from police on multiple occasions and utilized a false identity to try to evade arrest. Most street-level cocaine dealers do not traffic 22 kilograms or generate $2.4 million in proceeds in a lifetime; Davis collected that stunning amount *twice* in just eight days. Davis's ready access to over $5 million in cash drug proceeds—to say nothing of the additional money secreted in bank accounts that Davis failed to disclose to the Pretrial Services Office—demonstrates that he has substantial financial resources, which would be available to facilitate his flight if he were granted release. Likewise, Davis's demonstrated willingness to abandon his vehicle and the vast amounts of cocaine and cash it contained shows that no amount of collateral would be enough to hold him in the District.

To put it plainly, Davis has conclusively shown he is more than willing to flee in order to avoid prosecution; he has already attempted to do so *twice* in this very case. He has significant resources at his disposal, and his prior attempts at flight were undeterred by the fact that his identity was known to law enforcement or that he would be compelled to abandon millions of dollars in cash and product. With this backdrop, the Court can have absolutely no confidence that

Davis would not flee again if given the chance, particularly since it is now clear that he faces the prospect of spending the rest of his life in prison.

The circumstances of the offenses make equally plain that Davis poses a continuing threat to public safety. In addition to the large amounts of drugs and money in his possession, Davis was also carrying a loaded .45 caliber automatic pistol at the time of his first encounter with police. Courts have long recognized the combination of drugs and guns as a substantial public safety threat. *See*, *e.g.*, *United States v. Pitts*, 2010 WL 3303800, at *4–5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing *Levy*, 2008 WL 4978298, at *2; *United States v. Miller*, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); *United States v. Francis*, 2001 WL 899635, at * 5 (S.D. Ind. June 8, 2001)).

As the Honorable Cynthia M. Rufe, of this Court, put it, when denying a defendant's bail motion in a similar case:

> The presumption against bail, applicable only in certain circumstances, was legislatively established for a reason. It applies to [the defendant] because probable cause exists to believe that he committed numerous drug and firearms offenses, including possession of a firearm in furtherance of drug trafficking activities…. Danger to the community can come in many forms. Those of mixing gun possession with drug dealing, or recidivism indicating a propensity to commit further offenses are two such forms, and both are present here.

*Levy*, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008)

The same can be said in this case. Here, Davis possessed a loaded firearm in furtherance of his drug trafficking activities despite having been convicted of (and serving a lengthy prison sentence for) similar federal drug and gun offenses previously. Davis's recidivist criminal conduct and his illegal possession of a loaded automatic handgun in connection with his activity confirms that Davis cannot be trusted to comply with any law or supervisory condition aimed at

protecting the public. Indeed, as with his risk of flight, the threat to public safety posed by Davis is likely *enhanced* by the fact that he has now faces a very long prison sentence and would seem to have little to lose by committing additional crimes.

**2. The evidence in the case is overwhelming.**

At this stage in proceedings, the Court may base its pretrial detention determination upon the probable cause findings of the grand jury that returned the indictment. But suffice it to say that the government intends to present overwhelming evidence of Davis's guilt at trial.

Davis was caught red-handed by police in sole possession of 22 kilograms of cocaine, more than $2.3 million in cash, and a loaded gun. He then fled from police and was caught again, roughly a week later, with more than $2.4 million in additional drug proceeds. There is no question as to Davis's identity. At the time of his first encounter with police, Davis provided his driver's license and other identification before abandoning his vehicle and its contents and fleeing on foot. Nor is there a serious question regarding Davis's drug trafficking. Davis was alone is his own vehicle at the time that he was first stopped by police. The drugs, cash, and firearm were recovered from this vehicle, alongside Davis's other belongings and personal effects, moments after Davis ran from the car, in full view of police officers. Davis's flight, as well as his provision of a false identity and flight from his second police encounter, is further evidence demonstrating his consciousness of guilt. And Davis's possession of an additional $2.4 million at the time he was ultimately apprehended demonstrates that he continued to engage in drug trafficking activities even as police were seeking him after July 14, 2020.

In the government's view, this is not a close case. Based on the above evidence, Davis's conviction at trial is all-but-certain.

**3. The penalties that Davis faces are substantial.**

Once convicted, Davis faces a lengthy term of incarceration and significant mandatory sentence. The following potential maximum and mandatory minimum penalties are applicable:

For Count 1 (Possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)): A potential mandatory minimum term of 15 years' imprisonment, up to life imprisonment; a mandatory 10 years of supervised release up to a lifetime supervised release, a $20,000,000 fine, and a $100 special assessment.[1]

For Count 2 (Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)): A potential mandatory minimum of 25 years of imprisonment, up to life imprisonment, which must run consecutively to any other sentence imposed, a $250,000 fine, and special assessment of $100.[2]

For Count 3 (Possession of a firearm by a felon, in violation 18 U.S.C. § 922(g)(1)): A maximum penalty of 10 years in prison, up to three years of supervised release, a $250,000 fine, and a $100 special assessment.

The Total Maximum and Mandatory Minimum is: A potential mandatory minimum term of 40 years' imprisonment, up to life imprisonment; a mandatory 10-year term of supervised release up to lifetime supervised release, a $20,500,000 fine, and a $300 special assessment.

---

[1] Davis is subject to an enhanced mandatory minimum sentence on this count by virtue of his prior federal drug trafficking conviction, which constitutes a serious drug crime for which Davis served more than a year in prison. *See* 21 U.S.C. §§ 841(b)(1)(A), 851. The government has not yet filed its Section 851 Information for this Count but anticipates doing so.

[2] Pursuant to 18 U.S.C. §§ 924(c)(1)(C), Davis is also subject to an enhanced mandatory minimum penalty of 25 years on this Count, because he has a prior Section 924(c) conviction.

As already noted, these penalties would provide Davis with a very strong incentive to flee. Given the enhanced mandatory penalties that apply due to Davis's recidivist criminal conduct, it is very likely that Davis will spend the remainder of his life in prison.

**4. Davis's history demonstrates he is a criminal recidivist.**

Section 3142(g) also requires that the Court consider Davis's history and prior criminal conduct. As outlined above, Davis was previously convicted in this Court under 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 924(c)—the same statues under which his now charged—and served a lengthy term of imprisonment for these offenses. That earlier sentence, however, was obviously insufficient to deter Davis from engaging in recidivist criminal conduct. Davis's supervisory period for his prior federal convictions terminated in 2012. He now finds himself back in the same Court, for again trafficking drugs and carrying a firearm in furtherance of these activities.

**5. The seriousness of the threat posed by Davis's release is substantial.**

In sum, Davis faces near certain conviction in this matter, with the likely result that he will spend the rest of his life in prison. The nature of his crimes is extremely serious, and the evidence of his guilt is overwhelming. Davis is a significant drug trafficker, who carried a loaded automatic firearm while trafficking a huge amount of cocaine and cash. He has already attempted to flee from police on two occasions and utilized a false identity in a further effort to avoid arrest. He has access to significant financial resources, which could be used to facilitate his further flight from justice; these include accounts and other assets he failed to disclose to the Pretrial Services Office. Davis also has a history of similar criminal conduct, including prior federal drug and firearms convictions. To paraphrase Judge Rufe, the statutory presumption in

favor of Davis's detention applies for a reason. He continues to pose substantial danger to public safety and risk of flight, and should not be granted pretrial release under any set of conditions.[3]

**CONCLUSION**

Davis cannot rebut the statutory presumption in favor of his detention. Because no release condition or combination of conditions will reasonably assure Davis's presence as required or the safety of the community, the Court should deny Davis's motion.

---

[3] Davis's motion does not address the statutory factors set forth in Section 3142(g). Instead, he dismisses this controlling statute (at 5) as a "relic of a less technologically advanced time" and urges the Court to consider electronic monitoring as an alternative to detention. In response, the government observes that electronic monitoring is far from foolproof and is regularly deemed inadequate to ensure a defendant's attendance in Court and/or the safety of the community. It is inadequate here, given the significant risks Davis presents.

The remainder of Davis's motion addresses the impact of the COVID-19 pandemic on incarcerated defendants, and asserts that COVID-19 related precautions at the Federal Detention Center are likely to impede defense counsel's ability to prepare for trial. That is incorrect.

The FDC has significantly restricted movement of inmates and visits to the institution throughout the pandemic, as part of an effort to prevent the spread of the virus that was largely successful for over seven months. During the latter part of that period, legal visits were permitted, and private telephone calls with attorneys were also facilitated. Then, there was a notable outbreak beginning at the end of October, which compelled officials to lock down the prison to stem the outbreak and halt all visitation. In the end, it was determined through mass testing that approximately 200 of the 1,000 inmates in the institution tested positive. As of this writing, many weeks later, nearly all are deemed recovered. Fortunately, most infected inmates remained asymptomatic throughout, no inmate exhibited significant illness, and no inmate required medical care outside the institution.

During November, the FDC has continued to make efforts to facilitate private phone calls with attorneys. In all likelihood, legal visits will also resume shortly. And as notably, pursuant to an order of the Chief Judge, all trials in this district are suspended through at least January 15, 2021. Once trials resume, there will be ample opportunity, subject to the oversight of each judge, for counsel to prepare for trial in consultation with clients. These circumstances provide no basis for disregarding the manifest risk of flight and danger to the community that the defendant presents and that necessitates his continued detention.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/Sean P. McDonnell
Sean P. McDonnell
Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Government's Motion for Pretrial Detention was served by electronic mail and/or ECF filing, on the following defense counsel:

Dennis J. Cogan, Esq.
Attorney of Record for Defendant Antoine Davis

/s/Sean P. McDonnell
Sean P. McDonnell
Assistant United States Attorney

Date: November 30, 2020