UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No. 20-cr-00230-RBS |
| vs. | U.S. Courthouse<br>601 Market Street<br>Philadelphia, PA 19106 |
| ANTOINE DAVIS, Defendant. | Friday, October 30, 2020<br>12:27 p.m. |

TRANSCRIPT OF BAIL STATUS HEARING/ARRAIGNMENT
**BEFORE THE HONORABLE TIMOTHY R. RICE (VIA VIDEOCONFERENCE)**
**UNITED STATES MAGISTRATE JUDGE**

TELEPHONIC APPEARANCES:

For the Plaintiff: U.S. Attorney's Office
By: SEAN P. MCDONNELL, ESQ.
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8263

For the Defendant: Dennis J. Cogan & Associates
By: DENNIS J. COGAN, ESQ.
2000 Market Street, Suite 1850
Philadelphia, PA 19103
(215) 545-2400

ANTHONY J. PETRONE, ESQ.
1717 Arch Street, Suite 3640
Philadelphia, PA 19103
(215) 569-1000

Audio Operator: Michael Cosgrove, ESR

TRANSCRIBED BY: Access Transcripts, LLC
10110 Youngwood Lane
Fishers, IN 46038
(855) 873-2223
www.accesstranscripts.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(Proceedings commence at 12:27 p.m.)

THE COURT: Antoine Davis. That's Mr. Cogan's case.

MR. MCDONNELL: Your Honor, you have Sean McDonnell on behalf of the United States here, as well.

THE COURT: McDonnell.

Mr. Davis, good afternoon, sir.

THE DEFENDANT: How you doing, sir?

THE COURT: I'm doing well, thank you. Mr. Davis, do you give consent to proceed by video in light of the national pandemic?

THE DEFENDANT: Yes.

THE COURT: All right, thank you. I know you've retained Mr. Cogan, and we're here for an arraignment and detention hearing.

Mr. Cogan, have you had a chance to review the charges with your client? Your Mic.'s not on, Mr. Cogan, I'm sorry.

MR. COGAN: Hello?

THE COURT: Yes, we can hear you now.

MR. COGAN: All right, good.

He's prepared to enter a plea of not guilty. I have not reviewed this with him at all because I -- he's in custody, and I've not been able to get a (audio interference) because of the very thing that you have been saying to everybody. Because of the national pandemic, things have changed quite a bit. I

was going to go see him today at 6:30 in the morning. Judge, as you may know, FTC has accommodated lawyers that they can go in during the week, not on weekends, at 6:30 a.m. And while I didn't -- as early as 6:30 a.m., before other visits come in, I think, at nine o'clock -- go this morning at 6:30. It was pouring when I left the house, and things got complicated from there.

So I know he's read the indictment. He's familiar with the charges. We've reviewed it on the phone when he was earlier in state court on the same charge. He knows what the charges are against him, and he's prepared to enter a plea of not guilty.

THE COURT: All right. Sheila, why don't you arraign Mr. Davis on those charges.

THE CLERK: Yes, Your Honor.

Antoine Davis, you have been charged with Criminal (indiscernible) Number 20-230, Count 1, Title 21, United States Section 841(a)(1), (b)(1)(A), Possession with Intent to Distribute 5 Kilograms or More of Cocaine; and Count 2, Title 18, United States Section 924(c)(1), Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Count 3, Title 18, United States Section 922(g)(1), Felon in Possession of a Firearm.

(Indiscernible) these counts as you charged.

MR. COGAN: (Indiscernible).

THE COURT: All right, thank you, sir.

What are we doing about detention? How do you want to proceed, Mr. Cogan?

MR. COGAN: I think they're going to do it by proffer, and we're seeking release with conditions. There's a presumption against (indiscernible) in the case, and I know the Government's position because I have read their motion to seek trial suspension.

UNIDENTIFIED: (Indiscernible).

THE COURT: Okay. Mr. McDonnell?

MR. MCDONNELL: Yes, Your Honor. We've sent our motion to the Court and defense counsel yesterday. I don't want to repeat too much what's in that filing, especially given the limitations of video. I would just observe the circumstances of the case.

The Defendant was found with 22 kilos of cocaine, as well as $2.4 million roughly and a load of handguns. He then fled from police. He was then found again roughly eight days later by the police, this time with an additional $2.4 million. He attempted to flee again.

THE COURT: Okay. I understand.

MR. MCDONNELL: Your Honor, it's a presumption case, and the Government's position is that the Defendant cannot rebut the presumption.

THE COURT: All right. Mr. Cogan, do you want to be

heard? I can't hear you, Mr. Cogan. Sorry. Mr. Cogan, we can't hear you.

MR. COGAN: Can you hear me now?

THE COURT: Yes.

MR. COGAN: All right. I'm sorry, Judge, we're having (indiscernible) with respect to getting signals here, and I'm in my office building on Market Street. I just want to say this. I understand, you know, obviously, the presumption against bail, and I've received from Mr. McDonnell, as did Mr. Petrone, who's my co-counsel in the case, and he's here with me, the motion. A couple things that I want to point out that I think the Court should know.

First of all, this is a constructive possession case. They stopped him, the police. Why they did and what their information was, we're not sure. They found somewhere, not on him obviously, $2.4 million in cash. They found 22 kilograms of cocaine. Where that cocaine was found, we do not know, according to what their allegation is? Was it in the trunk? We don't have any information as to whether or not there were any other (indiscernible) before the police stopped him. It's a constructive possession case.

It's true he fled. That's the allegation in this case, and I have -- once again, my first (indiscernible) with the defendant in person -- we've talked on the phone -- will be most likely on Monday, when I can get into FTC. I can't do it

over the weekend. They won't do it on the weekend. I'm going to try to get up there at 6:30 so Mr. Davis knows exactly what I'm thinking. And this is our way of (audio interference).

The Government, I know just by -- overlooked this. The police stopped a car, and my client is a passenger in that car. They didn't say that in a motion. There was another person in the car where they found this money. There were no drugs or guns in that car, but my client did flee. And they found him, and he had $50,000 in currency, but the $2.45 million in currency found in the car this time was the car driven by somebody else and not in his possession.

Now, if I've misspoken in any way, Mr. McDonnell, I apologize, but I'm just looking at this based on the information that I have. And bear with me that I have (indiscernible) because the process we have the pandemic of meeting with him and talking to him and getting his side of the story.

A couple of other things if I might before (indiscernible) his ties to the community, Your Honor. In the Government's motion and pretrial services report, it refers to numerous prior cases. He has one prior conviction, I believe, and none of the other cases resulted in conviction. Again, I apologize if I'm wrong in any way. That case was a 1997 case. It was a drug, cocaine-based case. It was possession with intent to deliver, and he was in possession of a firearm, and

he received 121 months on the drug case and 60 months on the -- I believe, the firearms case. All the other cases are not convictions that he has on there. That was a case before Judge Lowell Reed of blessed memory, Judge. And that's it.

There is a reference in the pretrial services report that he has a pending case in Philadelphia. No, that's -- yeah, it's on the books, but it's this case. That's going to get withdrawn at the next listing of the case. They're not going to try the same case in two different forums, obviously.

So now, let me just say this if I can, bearing in mind the limitations of what I can say based on my inability to talk to him before today. He's got -- his wife is actually in my office and his daughter. His wife, I can say for the record, is Jerita (phonetic), and his daughter, Salima Davis (phonetic), she's here. But his wife was good enough to type up for me, which I'll have sent over for the record later today, but something that I'd just proffer. I have a list of some 78 people, many of whom have assured his wife that they would have been in court today were it not for the limitations of how we're proceeding in federal court today and many of whom would be there, and they -- a lot of them are members of his family and long-time friends.

I also was able to confirm -- and I can send that over, as well, and I have the name of the person -- from one Tamica Bacon Moss, who is the laborers' union, Local 332, which

handles a lot of things, including, Your Honor, the convention center -- he's a member in good standing of that, and he's also had employment over at the convention center. And let me just conclude with this because I've taken a lot of your time already.

Look, I'm familiar, as you well know -- you and I have discussed many, many times, even before, you know, you were a judge, when you were in charge of the criminal division of the U.S. Attorney's Office and I was just a humble defense lawyer. And, you know, that hat is, I suggest, is of a different era. I mean, you know, the presumption against bail is that no -- you know, nothing can guarantee his assurance. That's in a different world of technology than we have today. I mean, imagine when they wrote their reform act, it'd say in the condition that I'd be talking to you from a distance away by video and the client is some other place. I assume the U.S. Attorneys back then could see all the other people that I am not with today, including I saw earlier Mr. McConney (phonetic), who's been in my office a few times to help me during this period of time with clients who are not on -- in detention, where you can actually prepare a case when somebody's sitting in my office with an interpreter. And here I am, the problem of, as you pointed out, because the problems with the pandemic, we've got to proceed this way. Imagine what it's like for a defendant in custody, in this day and age,

facing serious charges, and his defense lawyer, a -- you know, with comorbidities has to figure out a way to safely go into that petri dish called FTC. And then, once you do that, thank heavens, they're now, unlike the one other time that I went there early on when you had to sit in the general visiting room with other people and their lawyers there, now they put you into the interview room and -- but that interview room does not give you much social distancing at all.

So I say that the act -- I don't want to get, you know, wimpy here, Judge, but I want the client to know that I've been thinking about this more than anything else. This act, as I say in a pre-technological year (indiscernible) today, electronic monitoring of the traditional sort that we all use today. But there's other technology. There's video surveillance they could be doing today. I mean, I -- if somebody rang my doorbell 20 minutes ago, I could see who it is that rang my doorbell at home. There's so many ways of being literally in custody but at his home with his wife and his ability to just come out of his house and meet with his lawyer. We're not even asking for the right to go to work or anything else.

So a constructive possession case, we don't know a lot of the details about where things were found, who else was in that car before the police stopped him. And I don't want to repeat myself, so I'm asking that you allow his release with

conditions.

THE COURT: Thanks, Mr. Cogan. I appreciate those insights, and thanks for your argument. I'm going to find by clear and convincing evidence the Defendant is a danger to the community, and by (indiscernible) evidence, he's a risk of flight, as based not only on (indiscernible) in this case but on his flight not once but twice and on his prior conviction in federal court. So I hold him without bail pending his trial.

Any further questions from anyone?

MR. COGAN: No, thank you, Your Honor.

MR. MCDONNELL: No, Your Honor.

MR. COGAN: If I could just send that message to my client, please don't oversleep on Monday. I'm going to be there at 6:30.

THE COURT: All right. Before we adjourn, McDonnell, did you hear me read the Brady v. Giglio notification of your obligations in the prior case?

MR. MCDONNELL: I did, Your Honor, and I'm familiar with those obligations. Thank you.

THE COURT: All right. And I'm going to enter an order reflecting that, and thank you for acknowledging your understanding of those. I appreciate it.

MR. MCDONNELL: Thank you, Your Honor.

THE COURT: All right. Thank you, everybody.

(Proceedings concluded at 12:41 p.m.)

**C E R T I F I C A T I O N**

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

Alicia J. Jarrett

ALICIA JARRETT, AAERT NO. 428 DATE: November 30, 2020

ACCESS TRANSCRIPTS, LLC