**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 20-230** |
| **ANTOINE DAVIS** | : | |

# UNITED STATES' SENTENCING MEMORANDUM

The defendant was a large-scale cocaine supplier in the Philadelphia area. During a three-month period from May 2020 to July 2020, he supplied a drug trafficking organization led by Herbert Robinson ("Robinson DTO") with over 400 kilograms of cocaine. During two car stops in July 2020, law enforcement seized from Davis a total of 22 kilograms of cocaine, approximately $4.8 million in cash, and a firearm. In June 2020, Davis laundered $100,000 in cash drug proceeds by funneling the money through the bank account of a third party and causing that third party to make a mortgage payment on a gas station that Davis owned. The defendant committed these drug, firearm, and money laundering crimes, despite having a prior federal drug and firearm conviction in this district. After balancing the severity of his conduct, the need for deterrence, and the remaining § 3553(a) factors—most notably, his complete acceptance of responsibility and the need to ensure consistency in sentencing among similarly situated individuals—the government submits that a sentence below the 292- to 365-month guidelines range is appropriate.

## I. PROCEDURAL BACKGROUND

On August 5, 2020, the defendant was charged by indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. On December 9, 2022, he was charged in a three-count Superseding Information with conspiracy to

distribute and possess with intent to distribute 5 kilograms or more of cocaine, possession of a firearm by a felon, and concealment money laundering. On December 12, 2022, the defendant pled guilty to all three counts pursuant to a guilty plea agreement.

## II. SENTENCING CALCULATION

The government agrees with the Probation Office's calculation of the guidelines range of 292 to 365 months' imprisonment, based on an offense level of 39 and criminal history category of II.

The guideline calculation is as follows:

- Base offense level (§ 2D1.1(a)): 38 (over 450 kilograms of cocaine)
- Possession of a firearm (§ 2D1.1(b)(1)): +2
- Conviction under 18 U.S.C. § 1956 (§ 2S1.1(b)(2)(B)): +2
- Acceptance of responsibility (§ 3E1.1): -3
- Total offense level: 39

The defendant is in criminal history category II, based on three criminal history points stemming from a 1998 conviction in the Eastern District of Pennsylvania.

## III. ANALYSIS OF STATUTORY FACTORS

After calculating the guidelines range and ruling on any pending motions, the Court must consider the sentencing factors set forth in Section 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional

treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

**A. The Nature and Circumstances of the Offense**

The defendant's crimes were incredibly serious, as he chose to act as a large-scale supplier to Robinson DTO, which sold hundreds of kilograms in cocaine in Philadelphia and elsewhere in the United States. Many members of the Robinson DTO were charged in a related case (*United States v. Robinson et al.*, 20-cr-415). Due to the magnitude of the defendant's drug trafficking activities, it is not surprising that he carried a firearm in one of the vehicles that he used to pick up drugs and cash drug proceeds and laundered his cash drug proceeds.

In early 2020, Robinson and Davis agreed that: (i) Davis would supply Robinson with large quantities of cocaine that Davis had obtained in "flats," or the inside portions of a box used in a shipment; (ii) members of the Robinson DTO would compress the cocaine into bricks for sale; (iii) Robinson would pay Davis a portion of the proceeds for Robinson's sale of cocaine; and (iv) Robinson would provide some of the compressed cocaine to Davis for his own wholesale operation.

In May 2020, over the course of several days, Davis provided several hundred kilograms of cocaine to the Robinson DTO and in return received several million dollars in cash drug proceeds.

In July 2020, investigators surveilled a drug stash location in Philadelphia used the Robinson DTO. On July 13 and July 14, 2020, investigators observed members of the Robinson DTO carry blenders, grinders, and several large garbage bags suspected to contain large amounts

of cocaine into this location. Shortly after midnight on July 14, 2020, surveillance units observed a black Subaru Outback, bearing Pennsylvania registration KVT-4922, drive up and park in the front of the property. After the vehicle left, investigators initiated a car stop on Henry Avenue in Philadelphia.

During the car stop, Davis provided officers his photo ID. Davis was told to wait while an officer with a narcotics canine reported to the scene. The canine alerted to the area between the driver's side front and rear doors, and the rear tailgate. Officers then advised Davis that the large black suitcase visible in the rear of the vehicle would be removed from the rear seat and the canine would conduct an open-air sniff of the suitcase and interior of the vehicle. At that time, Davis fled the scene on foot, heading southbound on Henry Avenue. The officers initially attempted to pursue Davis but were unsuccessful.

A subsequent search of the black suitcase and the Subaru Outback revealed 22 wrapped brick-shaped packages containing a hard pressed white powdery substance, which field tested positive for cocaine. Laboratory results confirmed that these bricks contained cocaine. Also inside the same black suitcase, agents recovered several bags containing approximately $2,261,730 in cash drug proceeds. A further search of the vehicle revealed a backpack located in the front area, near the driver’s seat, which contained a loaded Ruger P345 .45 automatic handgun bearing serial number 664-52269 and a rose gold watch, with an appraised value of $165,000.

After the above incident, investigators continued to attempt to locate Davis and to monitor and surveil the members of the Robinson DTO. On July 22, 2020, agents observed Samyre Washington, Robinson’s top lieutenant, deliver a series of packages to two individuals in a Volkswagen Atlas at another stash house location used the Robinson DTO. Officers stopped

the Volkswagen Altas shortly thereafter, and Davis was identified as a passenger. During the car stop, Davis stated that he did not have identification and provided officers with a fictitious name and date of birth. While officers were conducting law enforcement database checks, Davis exited the rear of the vehicle and again attempted to flee from the scene on foot. This time, however, he was unsuccessful at evading arrest and was safely apprehended by the officers. A subsequent search of the vehicle was conducted which resulted in the discovery of several bags containing $2,444,251.00 in cash drug proceeds and additional cash on Davis's person, for a total of approximately $2,460,024.00.

During the time that Davis was supplying hundreds of kilograms of cocaine to the Robinson DTO and receiving millions in cash drug proceeds, he was also laundering that money. Specifically, as charged in Count Three, in August 2019, Davis purchased a gas station in Cherry Hill, NJ. Based on records subpoenaed from the seller, the seller sold the gas station to Davis for $850,000. Davis provided a down payment of $200,000 and received from the seller a mortgage for the remaining account. On June 1, 2020, Davis was required to make a $100,000 mortgage payment. The seller's records show that the $100,000 payment was made via check on June 3, 2020 from a company that was not associated with Davis. Based on subpoenaed bank records, on the same day that a check was written from the company's bank account to the seller, the company received a deposit of approximately $102,000 in cash into its bank account.

**B. The History and Characteristics of the Defendant**

The defendant committed the crimes in this case, despite having been convicted of a virtually identical offense in this district—i.e., a prosecution stemming from drugs and a gun recovered from his vehicle. PSR ¶ 46. According to the PSR, on November 21, 1996, Philadelphia Police officers observed a Chevy Tahoe cut across traffic and park. The driver

exited the vehicle and entered a house. Officers looked inside the vehicle and saw three baggies of an off-white chunky substance. A search warrant later resulted in the seizure of 250 grams of cocaine base and a loaded Beretta handgun in the center console. The vehicle contained identification documents in Davis' name. Davis was later convicted at trial of possession with intent to distribute cocaine base and possession of a firearm during a drug trafficking crime. He was originally sentenced to 211 months' imprisonment but later had his sentenced reduced to 180 months' pursuant to 18 U.S.C. § 3582(c). He completed his five years of supervised release without incident.

Based on the PSR, after being released from custody on the above-described conviction, the defendant was able to obtain employment in the construction and real estate industry, both as a member of the Local 332 union in Philadelphia and the owner of his own real estate business. PSR ¶ 79-80. As described above, however, the defendant used proceeds from his drug trafficking business to pay for expenses related to at least one of his real estate ventures, a gas station in New Jersey. In any event, it is hard to understand why the defendant would fall back into large-scale drug trafficking, when he had the opportunity to continue with his legitimate employment.

Finally, when weighing the defendant's characteristics, the Court should also consider that the defendant completely accepted responsibility. The defendant filed a motion to suppress evidence seized from the two vehicles, but later agreed to a continuance of the hearing while the parties were engaged in plea discussions. He later pled guilty pursuant to an information. As a result, the government did not need to present those charges to a grand jury, and the Court did not need to preside over a trial or rule on any pretrial or posttrial motions. In sum, the defendant's guilty plea allowed the government and Court to allocate their resources efficiently

during the pendency of this case.

**C. The Seriousness of the Offense, Respect for the Law, and Just Punishment**

But for the defendant's complete and prompt acceptance of responsibility, a guidelines' sentence may have been warranted to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

**D. Deterrence and Protecting the Public**

The Court must also consider the need to protect the public and to deter the defendant and others from engaging in similar crimes in the future. Here, there is a substantial need for deterrence given that the defendant committed this offense after having committed a prior federal drug trafficking and firearm conviction—for which he was sentenced to 180 months. That case has clearly not deterred the defendant from committing further crimes or caused him to stop pumping illegal drugs into the community. Accordingly, a significant custodial sentence is needed to serve the goal of deterring this defendant and others from engaging in future criminal conduct and protecting the community.

**E. Other Considerations**

There is no need to adjust defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The government is not aware of any unique issues regarding education, vocational training or medical needs relating to this defendant.

**F. Need to Avoid Unwarranted Sentence Disparities**

This case is related to *United States v. Herbert Robinson, et al.*, 20-cr-415. In that case, ten of the twelve defendants have been sentenced. Ross Brooks, Marcus Washington, and Marvin Watson, the number 3, 5, and 6 defendants in the indictment, received sentences of 144,

140 months, and 108 months, respectively. All three had extensive criminal histories (categories IV, VI, and V, respectively). Washington and Watson participated in the conspiracy for over a year, and Brooks had a separate methamphetamine trafficking operation and was found with two firearms at the time of his arrest. Seven lower-level defendants have also been sentenced: Melvin Butler, who supplied approximately 19 kilograms of cocaine to the Robinson DTO and had a prior federal drug trafficking conviction, received a sentence of 60 months; Kashon Adade and Randall Overton, who helped process cocaine for wholesale distribution, received sentences of 72 months and 60 months; James Flack, who primarily assisted with money drops over a short period of time, received a sentence of 48 months; Gilberto Alaniz, a Texas-based drug courier with no criminal history, received a sentence of 41 months; Antonio Simmons, a regional supplier, received a sentence of 54 months, and Oscar Von Tyler, a regional supplier with an extensive criminal history and track record of violence, received a sentence of 96 months imprisonment.

A below-guidelines sentence would be consistent with the sentences imposed in this related case.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the government submits that a sentence below the guidelines range is appropriate.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Date: October 4, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Sentencing Memorandum to be served by ECF and email upon counsel for defendant:

Dennis J. Cogan, cogan2128@aol.com
Anthony J. Petrone, apetrone@petronelegal.com
Peter Goldberger, peter.goldberger@verizon.net

*/s/ Francis A. Weber*
FRANCIS A. WEBER
Assistant United States Attorney

Dated: October 4, 2024